L. R. BAIRD v. ANDREW SIMONSTAD.
NORTHWESTERN COMMISSION COMPANY, GARNISHEE;
FIRST STATE BANK OF POWERS LAKE, NORTH
DAKOTA, INTERVENER.[1]

No. 30,109.

December 14, 1934.

[1]Reported in 258 N. W. 570.

80

*Converse & Spence,* for appellant.
*S. B. Kay,* for respondent.

STONE, JUSTICE.

The intervener, First State Bank of Powers Lake, North Dakota, appeals from the order denying its motion for amended findings or a new trial.

The action is on a promissory note of defendant, Simonstad, who has not appeared. Northwestern Commission Company, a live stock broker at South St. Paul, was garnished and disclosed the

debt to defendant which is now claimed by the intervener, First State Bank of Powers Lake, North Dakota. November 19, 1931, Simonstad, a shipper of live stock at Powers Lake, signed two drafts in favor of the intervener against the garnishee. One was for $550 and the other for $100. The drafts were drawn pursuant to an agreement with the payee, intervener, that it would "finance" the purchase by Simonstad of a carload of cattle to be shipped to South St. Paul, and that against the credit set up by the drafts he would "draw checks to these several farmers from whom he purchased these cattle." The intervener forwarded the drafts for collection to the American National Bank of St. Paul. Simonstad shipped to the garnishee the carload of cattle. The drafts were drawn generally and not against the proceeds of the shipment. How the bill of lading was handled does not appear. It did not accompany the drafts. Things then happened in this order. Saturday, November 21, the $550 draft was presented to the garnishee at South St. Paul. Its representative to whom the draft was presented advised the bank's messenger that the draft could not be paid "before the arrival of the [Simonstad] stock," which "had not yet arrived." He "asked them if they could hold it until the arrival of the stock," at the same time assuring the bank that the draft "would be paid at that time if the proceeds of the car of stock were that much." The next day, Sunday, the shipment arrived at South St. Paul and was received by the garnishee. Monday, before the draft was again presented, the garnishee summons was served. The draft for $100 was never presented to the garnishee. After the service of the garnishee summons, the two original drafts were canceled and a new one drawn for $650 for the same debt, by the same drawer, and against the same drawee.

■ The facts show a case of equitable assignment by defendant as drawer of the drafts to intervener, the payee, of $550 of the proceeds of the shipment in question. (The assignment did not include the $100 covered by the second draft, which was not presented to the garnishee before service of the garnishment summons.) We so hold following First Nat. Bank v. Rogers-Amundson-Flynn Co. 151 Minn. 243, 186 N. W. 575, where many cases are cited and

considered at some length. The rule here is that, while a draft drawn generally will not operate as assignment of anything in the hands of the drawee, yet, if the drawee is given notice that the draft was intended to give the payee [151 Minn. 247] "an interest in or entitle it to receive funds coming into its hands from" the sale of designated goods (cattle), "and, with such notice, it took possession and sold them, it became liable to plaintiff." That is the result because the cause of action is not on the draft itself, but on the draft plus other circumstances which not only show intention to assign, as between drawer and payee, but also notice of the assignment to the drawee. "An unaccepted bill, draft, or order, payable generally, in connection with proof of other circumstances showing that such was the intention, may operate as an assignment, vesting in the holder an exclusive claim to the fund." 5 C. J. 917.

From both Lewis v. Traders' Bank, 30 Minn. 134, 14 N. W. 587, and Live Stock State Bank v. Hise, 150 Minn. 301, 185 N. W. 498, there were absent the requisites for an equitable assignment. The drafts stood alone, and so did not create any rights in the payee superior to those acquired by the service of the garnishment process. In each case it was said, and correctly, that parol evidence was inadmissible to show that the parties intended the draft to operate as against a particular fund. A negotiable instrument is a complete written contract not to be varied by parol evidence. But, as already indicated, intervener's claim is not based upon the draft alone, but upon all the evidence of an equitable assignment, of which the draft was but part. That contract is neither altered nor impinged upon by the conclusion that intervener made out an equitable assignment as to $550, the amount of the draft which was presented before the garnishee summons was served.

■ There is argument for plaintiff that, because the two original drafts were canceled (although a new one for the aggregate amount of the two was immediately drawn to replace them), there was discharge of the original drafts. The argument is put upon 2 Mason Minn. St. 1927, § 7162 (N. I. L. § 119), under which a negotiable instrument is discharged by its "intentional cancellation" by the holder. Again, it is plain that although the original drafts were

surrendered, and probably destroyed, the equitable assignment already effected was not thereby nullified. It did not change the then status of the parties or their rights. The obligation evidenced by both original drafts was but merged in the new one substituted for them. The operation was not different from the renewal of a promissory note, the old one being surrendered by the holder.

■ 2 Mason Minn. St. 1927, § 7170 (N. I. L. § 127), declares:

"A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same."

If it had been the intention to do away entirely with existing law as to the capacity of a bill of exchange, plus other sufficiently potent circumstances, to create an equitable assignment of a fund in the hands of the drawee, the statute would have made it plain. It would have declared that a bill under no circumstances could have any effect as proof of an assignment and that under no circumstances would the drawee be liable thereon unless and until he accepts the same. The statute is not so worded, and it is significant that the denial of effect is directed at "a bill of itself." Implicit, then, is the idea that a bill, together with competent extraneous facts, may produce the result denied to the bill of "itself." The thought is well put in 38 Harv. L. Rev. 870. Speaking of § 127 of the negotiable instruments law (and § 189 relative to checks), it says:

"In the second place it must be noted that these sections simply provide that a bill or check *of itself* shall not amount to an assignment. If the bill or check *plus* something else might have amounted to an assignment or created a situation giving the holder without acceptance or certification a remedy against the drawee, such a result may just as well follow under the statute as before its enactment. Hence in the situations referred to above, wherein it was concluded that there were circumstances outside the mere issuance of the order that gave the holder a remedy against the

drawee as upon an assignment, or in the case of a contract between the drawer and drawee for the holder's benefit, or that of the creation of a trust for the benefit of the holder, the same result would be reached today. In fact a number of the cases cited above were decided under the statute." Correct, we think, is the statement that [38 Harv. L. Rev. 860] "in each case the inquiry is whether an intention to transfer ownership in the fund in the hands of the debtor has been carried out so that thereafter the drawer-assignor has no further control over the fund, authority to collect, or power of revocation."

Our conclusion is that 2 Mason Minn. St. 1927, § 7170 (N. I. L. § 127), has not changed the law as to the capacity of a draft to operate with other essential facts so as to create an equitable assignment. The drawee-garnishee had notice that the Simonstad draft was outstanding, a demand was made thereunder, and the garnishee promised to honor the demand if repeated after the stock had been received, as it was before the garnishee summons was served. The intention of all the parties, drawee included, was manifested as plainly as words and conduct could do it. Being lawful, such a contractual intention should not be subjected to defeat by a strained or artificial construction and application of the law. Were the draft alone the basis of intervener's claim, the parol evidence rule would defeat him. But, as previously said, the draft is but part of the proof of the assignment to it of part of Simonstad's funds in possession of the garnishee.

We are aware that the rule of this decision runs counter to what is termed "the great weight of authority." 3 R. C. L. 1298. With great deference to the contrary view, we feel constrained to adhere to the principles already established here. First Nat. Bank v. Rogers-Amundson-Flynn Co. 151 Minn. 243, 186 N. W. 575; Carlson v. Stafford, 166 Minn. 481, 208 N. W. 413. For reasons just examined, we think that the law has not been changed, on the determinative point, by the negotiable instruments law.

The order under review must be reversed and the case remanded with instructions to modify the findings of fact, conclusions of

law, and order for judgment in accordance with the views above expressed. The intervener will have judgment for $550, with lawful interest.

So ordered.

ORDER ON PETITION FOR REHEARING.

January 18, 1935.

The petition of plaintiff-respondent for a rehearing is denied as to the merits of the case. But the direction for the allowance of interest in the judgment to be entered below was erroneous and should not have been included. It is stricken from the decision, and the judgment to be entered will be only one declaring the intervener's right to $550 of the fund in the hands of the garnishee.

